UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STEPHEN J. MCCULLOUGH, an individual,<br><br>Plaintiff,<br><br>v.<br><br>DANIEL DRISCOLL, Secretary of the Army, in his official capacity,<br><br>Defendant. | Civil Action No. 1:25-cv-1782 |

**COMPLAINT FOR REVIEW OF FINAL DECISION ISSUED
BY ARMY BOARD FOR CORRECTION OF MILITARY RECORDS**

### I. NATURE OF THE ACTION

1. On December 9, 2022, Plaintiff Major Stephen J. McCullough (Ret.), applied to the Army Board for Correction of Military Records (ABCMR) requesting that the Army exercise its power under 10 U.S.C. § 1552 to prevent injustice by correcting his military record to reflect that he elected to transfer his earned education benefits under the Post-9/11 Veterans Educational Assistance Act (the "Post-9/11 GI Bill") to his daughters.

2. On August 16, 2023, the ABCMR issued a final decision, AR20230002663, denying Maj. McCullough's application.

3. Maj. McCullough now brings this action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq.*, to set aside the ABCMR's decision as arbitrary, capricious, an abuse of discretion, not in accordance with law, and because it deprives Maj. McCullough of his statutory rights.

### II. JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this claim pursuant to 28 U.S.C. § 1331 because this case raises questions under several federal statutes, including, but not limited to, 10 U.S.C. § 1552 and the Administrative Procedures Act, 5 U.S.C. § 701, *et seq*.

5.      This Court has personal jurisdiction over the parties pursuant to 5 U.S.C. § 702., *et seq*.

6.      Venue is proper in this District under 28 U.S.C. § 1391, *et seq*.

### III. THE PARTIES

7.      Plaintiff Maj. McCullough (Ret.) is a U.S. citizen and decorated veteran. He received numerous medals and commendations for his military service.

8.      Defendant, the Honorable Daniel Driscoll, is the Secretary of the Army. The ABCMR acts on behalf of the Secretary of the Army. *See* 10 U.S.C. § 1552, *et seq*. The Office of the Secretary of the Army is located in the District of Columbia at 101 Army Pentagon, Washington, DC 20310-0101. The Secretary of the Army is authorized under Department of Defense ("DoD") regulation to accept service on behalf of the Army. 32 C.F.R. § 257.5(b).

### IV. STATUTE OF LIMITATIONS AND JUSTICIABILITY

9.      Plaintiff brings this action within the applicable six-year statute of limitations for commencing an action against the United States. 28 U.S.C. § 2401.

10.     The decision of the ABCMR is a final agency action and is reviewable pursuant to 5 U.S.C. § 704.

### V. STATUTORY BACKGROUND

11.     On June 30, 2008, the President of the United States signed the Post-9/11 GI Bill into law. The Post-9/11 GI Bill is designed to provide educational assistance benefits to servicemembers and veterans of the Global War on Terror commensurate with years served on active duty.

12.     The Post-9/11 GI Bill allows for servicemembers and veterans to transfer their educational assistance benefits to their dependent spouse or children. *See* 38 U.S.C. § 3319.

13.     Congress conferred authority on the Secretary of Defense and the Secretary of Veterans Affairs to prescribe regulations regarding the administration of educational assistance under the Post-9/11 GI Bill, including, but not limited to, "the manner of authorizing the transfer

of entitlement," "eligibility criteria," and "the manner and effect of an election to modify or revoke a transfer of entitlement." 38 U.S.C. § 3319.

14. Pursuant to that authority, the Secretary of Defense issued directive-type memorandum ("DTM") 09-003, which establishes, among other things, the "policy for authorizing the transferability of education benefits," or "TEB".

15. DTM 09-003 provides that education benefits may be transferred to dependents "only while serving as a member of the Armed Forces."

16. Furthermore, DTM 09-003 requires that the "Secretaries of the Military Departments *shall… [p]rovide* active duty participants and members of the Reserve Components with qualifying active duty service individual pre-separation or release from active duty counseling on the benefits under the Post-9/11 GI Bill and document accordingly." (Emphasis added.)

17. In addition to the Secretaries' duty under DTM 09-003, 10 U.S.C. § 1142 requires the Secretaries to "provide for *individual* pre-separation counseling of each member of the armed forces" regarding "educational assistance programs because of the member's service in the armed forces." (Emphasis added.)

18. Upon the completion of individual pre-separation counseling, 10 U.S.C. § 1142 also requires that "[a] notation of the provision of such counseling with respect to each matter specified…signed by the member, *shall be placed* in the service record of each member receiving such counseling." (Emphasis added.)

19. Thus, potential beneficiaries of the Post-9/11 GI Bill must receive pre-separation counseling regarding those benefits, and a notation affirming that the counseling has been received must also be made. Here, the Secretary of the Army failed to meet either requirement.

## VI. MAJ. MCCULLOUGH'S SERVICE RECORD

20. Maj. McCullough began his military career as a cadet at the U.S. Military Academy at West Point in 1988. After exemplary performance at West Point, he graduated in 1992 and was commissioned as a Second Lieutenant in the U.S. Army Corps of Engineers.

21. Maj. McCullough dedicated his early service towards rigorous training. He graduated from the Engineer Officer Basic Course, Engineer Officer Advanced Course, Ranger School, Airborne School, Sapper School, and Mountain Warfare School.

22. Maj. McCullough applied his training in the field. As a young lieutenant, McCullough served in the 24th Infantry Division, which was then part of the 18th Airborne Corps rapid deployment force, and the 2nd Infantry Division in South Korea. He served in key positions as platoon leader, executive officer, company commander, and battalion staff officer. Maj. McCullough also completed a successful deployment to Kuwait as a company commander.

23. Maj. McCullough conducted multiple training exercises that required detonating explosives from close range. During these operations, an individual would emplace an explosive device, trigger the detonator, and then sprint back to the protected area as quickly as possible to avoid injuries from the explosion. Striving to lead from the front, Maj. McCullough often personally took on the task of emplacing the explosive devices to ensure his team remained out of harm's way. In doing so, he often did not make it back to the bunker before the explosion, sustaining multiple injuries as a result.

24. As a result of these injuries, Maj. McCullough began experiencing cognitive decline. He suffered from debilitating headaches, eventually lost his ability to read, lost his memory, and suffered from seizures.

25. Overall, Maj. McCullough's service-connected diagnoses include, but are not limited to:

- Degenerative arthritis cervical spine and chronic pain syndrome;
- Chronic (atypical) headaches, also diagnosed as migraine;
- Long thoracic nerve palsy with arterial abrasion, chronic pain syndrome limited function left (minor) arm (prior brachial plexopathy);
- Failed back syndrome with spinal fusion and chronic pain syndrome;
- Seizure disorder; and
- Major depression disorder with pain disorder and anxiety disorder

26. Despite his injuries, Maj. McCullough continued to serve in the Army to the best of his ability.

27. In September of 2010, Maj. McCullough received a Separation Memorandum from Human Resources Command stating that he was not being retained for further service in the Army. Maj. McCullough was officially retired from the U.S. Army on December 21, 2010.

28. During his military career, Maj. McCullough earned the Meritorious Service Medal, Army Commendation Medal, Army Achievement Medal, Army Superior Unit Award, National Defense Service Medal, Southwest Asia Service Medal with Bronze Service Star, and the Global War on Terrorism Service Medal.

29. Due to his service record, Maj. McCullough qualifies for Post-9/11 G.I. Bill educational assistance benefits. Maj. McCullough was also eligible to transfer his G.I. Bill benefit through the TEB program when the program first became available on August 1, 2009.

30. Despite Maj. McCullough's exemplary service to his country, marked by countless acts of self-sacrifice, and his specific need for individual counseling due to his cognitive injuries, he did not receive any briefings, counseling, or classes regarding his impending separation, or his earned education benefits. Relevant here, Maj. McCullough received no counseling whatsoever—as required—that he could only transfer Post-9/11 GI Bill education benefits "while serving as a member of the Armed Forces."

31. Maj. McCullough's personnel file does not contain Form 2648 or 2958 reflecting that he received pre-separation counseling, as required by DTM 09-003 and 10 U.S.C. § 1142.

32. In 2020, Maj. McCullough was informed, for the first time, that he was only able to transfer his education benefits while serving on active duty.

33. On December 9, 2022, Maj. McCullough submitted an application to the ABCMR under 10 U.S.C. § 1552 to prevent injustice by correcting his military record to reflect that he elected to transfer his earned education benefits under the Post-9/11 GI Bill to his daughters while on active duty.

34. Maj. McCullough's Post-9/11 GI Bill benefits will expire on December 20, 2025, due to the 15-year delimiting period.

## VII. THE ABCMR DECISION

35. On May 25, 2023, the Education Incentives Branch of Army Human Resources Command (HRC) submitted an advisory opinion to the Board recommending disapproval of Maj. McCullough's application to correct his military record.

36. The HRC conceded that Maj. McCullough was first eligible to transfer benefits under the Post-9/11 GI Bill when the program became available on August 1, 2009, because he had already obtained the minimum six years of service.

37. Yet, despite no evidence in the record that Maj. McCullough was individually counseled as required by federal statute and DoD directive, the HRC sidestepped these requirements. The HRC apparently did so by concluding that Maj. McCullough was constructively aware of the requirement to transfer education benefits to dependents while on active duty. The advisory opinion states generally that "[s]oldiers receive counseling on all GI Bill[]…benefit[s] and its TEB incentive at various venues throughout the Soldier's career," and "[s]oldiers have had access to and received counseling on GI Bill benefits through SFL-TAP since 2002 on-line and in-person." It further generalizes that "[t]he Department of Defense (DOD), Department of the Army (DA) and Department of Veterans Affairs (DVA) initiated a comprehensive publicity campaign plan that generated major communications through military, public, and social media venues on the Post 9/11 GI Bill and subsequent transfer of education benefits. This information was available to MAJ (Ret) McCullough prior to his retirement."

38. In effect, the ABCMR read away the counseling requirement by rationalizing that Maj. McCullough, despite his confirmed cognitive decline, may have been informed about the benefits through such vague means as "publicity," "major communications," and "social media."

39. Consistent with its failure to inform Maj. McCullough regarding his benefits, neither HRC nor the ABCMR notified counsel for Maj. McCullough that HRC had issued that advisory opinion.

40. In January 2024, after eight months had elapsed, counsel for Maj. McCullough learned that the advisory opinion issued. The comment period is 15 days.

41. On January 31, 2024, counsel for Maj. McCullough emailed the designated individual at the ABCMR to request an extension for providing comments on the advisory opinion.

42. On April 11, April 23, May 1, May 3, May 6, and April 8, 2024, counsel for Maj. McCullough made similar attempts to contact the designated individual. Counsel for Maj. McCullough never received a response.

43. On June 14, 2024, Maj. McCullough nonetheless responded to the HRC comment, arguing that (1) the advisory opinion failed to show that the Army affirmatively counseled Maj. McCullough on his eligibility and opportunity to elect TEB prior to out-processing, (2) the advisory opinion disregards Maj. McCullough's significant cognitive impairment due to Traumatic Brain Injury (TBI) during the limited time he could have elected TEB, and (3) even if the Army could prove that Maj. McCullough was properly counseled and provided the opportunity to elect TEB prior to separation, the ABCMR retains the discretion to correct Maj. McCullough's record given his unique circumstances.

44. Unbeknownst to Maj. McCullough, the ABCMR had already convened and adopted the recommendation of the HRC nearly one year earlier, on August 16, 2023.

45. Even though the Secretary and those under his authority never individually counseled Maj. McCullough of the active-duty requirement for the TEB incentive, the ABCMR denied Maj. McCullough's application because "there is no record that he visited the milConnect website to submit a request after 12 November 2010, therefore no transfer of education benefits was ever approved." In so concluding, the ABCMR arbitrarily and illogically disregarded its own precedent, court-made precedent, DoD directives, and various federal statutes, including, but not limited to 10 U.S.C. § 1142.

46. Notwithstanding correspondence sent from Maj. McCullough's attorneys to the ABCMR inquiring into the status of his application, the ABCMR *never* notified Maj. McCullough that it had issued a final decision on his application, as required by Action Revision (AR) 15-185. Maj. McCullough only became aware that an opinion had been issued on September 12, 2024, through independent investigation.

47. Due to the ABCMR's failure to notify Maj. McCullough of its final decision, the one-year period to petition the ABCMR for reconsideration of his application has already passed.

48. Maj. McCullough now brings this action under the Administrative Procedure Act, 5 U.S.C. § 701 et seq., to set aside the ABCMR's decision.

## COUNT I
**(Violation of the APA, 5 U.S.C. § 706(2)(A) –
Arbitrary and Capricious, Abuse of Discretion, Not in Accordance with Law)**

49. Plaintiff re-alleges and incorporates by reference each of the allegations in Paragraphs 1 through 48 above as if fully set forth herein.

50. Defendant's final decision was arbitrary and capricious, constituted an abuse of discretion, and was otherwise not in accordance with law.

51. As a direct result of Defendant's arbitrary final decision denying Plaintiff's application to correct his military record, Plaintiff continues to be deprived of his ability to transfer his Post-9/11 G.I. Bill benefit to his children as is his right under 38 U.S.C. § 3319.

52. Under the APA, this Court has authority to "hold unlawful and set aside agency action, findings, and conclusions found to be… arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A). Plaintiff is therefore entitled to the relief requested below.

## COUNT II
**(Violation of the APA, 5 U.S.C. § 706(2)(C) –
Agency Action Depriving Maj. McCullough of Statutory Right)**

53. Plaintiff re-alleges and incorporates by reference each of the allegations in Paragraphs 1 through 52 above as if fully set forth herein.

54. Plaintiff is entitled to Post-9/11 GI Bill educational assistance benefits.

55. Plaintiff was eligible to transfer his GI Bill benefit through the TEB program when the program first became available on August 1, 2009.

56. Plaintiff was entitled to pre-separation counseling regarding the TEB program under 10 U.S.C. § 1142, among other authority.

57. Defendant's decision denying Plaintiff's application to correct his military record deprives Plaintiff of his statutory right to transfer his G.I. Bill benefit to his daughters.

58. Under the APA, this Court has authority to "hold unlawful and set aside agency action, findings, and conclusions found to be … short of statutory right," 5 U.S.C. § 706(2)(C). Plaintiff is therefore entitled to the relief requested below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Maj. McCullough requests that the Court grant the following relief:

(A) Hold unlawful in its entirety and set aside the ABCMR's 2023 decision denying Maj. McCullough's application to correct his military record.

(B) Enter an order enjoining the Department of Veterans Affairs and the Office of the Secretary of Defense from terminating Maj. McCullough's Post-9/11 G.I. Bill benefits due to the 15-year delimiting period until Maj. McCullough's rights are fully adjudicated.

(C) Enter judgment in favor of Maj. McCullough on all counts of this Complaint;

(D) Remand the matter to the ABCMR for further actions in accordance with the Court's findings, decision, and order;

(E) Upon proper application, award Maj. McCullough attorney fees under the Equal Access to Justice Act; and

(F) Award such other relief as the Court deems appropriate

[Signature Page Follows]

Dated:  June 5, 2025.                    Respectfully submitted,

**PERKINS COIE LLP**

By: */s/ Barak Cohen*_____
    Barak Cohen, D.C. Bar No. 485945
    BCohen@perkinscoie.com
    700 13th St NW, Ste. 800
    Washington, DC 20005
    Telephone: +1.202.654.6200
    Facsimile:  +1.202.654.6211

    */s/ Thomas J. Tobin*_____
    Thomas J. Tobin, D.C. Bar No. 1049101
    TTobin@perkinscoie.com
    1201 Third Ave., Ste. 4900
    Seattle, WA 98101
    Telephone: +1.206.359.8000
    Facsimile:  +1.206.359.9000

    Justin J. Richter,
    *Pro Hac Vice* Application Forthcoming
    JRichter@perkinscoie.com
    1120 N.W. Couch Street, Tenth Floor
    Portland, Oregon 97209
    Telephone: +1.503.727.2000
    Facsimile:  +1.503.727.2222